```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
EDWARD WESTPHAL

                         Plaintiff,            05-CV-6120

-vs-
                                               DECISION
                                               and ORDER
EASTMAN KODAK COMPANY;
EASTMAN KODAK COMPANY LONGTERM DISABILITY
PLAN; METROPOLITAN LIFE INSURANCE COMPANY;
 METLIFE DISABILITY COMPANY


                         Defendants.
_____
```

INTRODUCTION

Plaintiff, Edward Westphal, ("Westphal") brings this action against Eastman Kodak Company ("Kodak"), Eastman Kodak Company Long Term Disability Plan, Metropolitan Life Insurance Company and MetLife Disability Company ("the defendants") alleging breach of contract and a violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq., claiming that the defendants have wrongfully denied his application for long term disability benefits. Specifically, the plaintiff seeks to recover benefits dating back to November 27, 2003, which is the alleged onset date of his disability. For determination are competing motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure brought by the parties on October 31, 2005.

BACKGROUND

In 1979, plaintiff Edward Westphal began working for the defendant Eastman Kodak Company and continually worked for Kodak for over twenty years until December 1, 2003, when he retired due to his disability. Throughout his employment, Westphal was enrolled in an Eastman Kodak Company Profit and Retirement Benefits Plan, ("the Plan") to which he made weekly contributions. Kodak is the Plan Administrator ("Plan Administrator") of the Plan, and by contractual arrangement with the defendant Metropolitan Life Insurance Company and MetLife Disability Company, (collectively "MetLife") which provided assistance with processing claims, the Plan Administrator was granted discretionary authority to administer the Plan.

On June 23, 2003, following consultation with the Eastman Kodak Company's Human Resources Department, the plaintiff was advised that he was eligible for early retirement and separation under the provisions of the Plan due to his disability. Westphal then completed the necessary paperwork to effectuate his separation from employment due to his inability to perform any occupational functions for which he was reasonably fit because of his education, training, or experience. The plaintiff identified the following physical limitations as the basis of his claimed disability: 1) loss of sleep; 2) memory loss; 3) manic depression; 4) Chronic Obstructive Pulmonary Disease; 5) angina;

and 6) lower back, hip and leg pain. Based on a Kodak Disability Calculation Sheet provided to him by Kodak's Human Relations Department, an estimated disability date was established effective November 27, 2003 and his retirement date was scheduled for December 1, 2003.

On September 25, 2003, as required by the provisions of the Plan, the plaintiff applied for Social Security benefits, specifically, Old Age, Survivor, and Disability Insurance Benefits. The plaintiff was determined by the Social Security Administration to be entitled to Social Security Disability Benefits, based on his medical and psychiatric problems in accordance with Social Security Administration Rules as of June 23, 2003.[1]

On March 12, 2004, four months after he retired, Westphal was advised by the defendants that his application for long term disability benefits under the Plan had been denied. The plaintiff appealed that decision and on October 19, 2004, the initial denial of benefits was affirmed. On March 31, 2005, the plaintiff commenced this action. On October 31, 2005 both parties moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

---

[1] A claimant is disabled within the meaning of the Act only if his impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education and work experience, engage in any other kind of substantial work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A); see 20 C.F.R. §§ 404.1520.

DISCUSSION

I. Summary Judgment Standard

Summary judgment is proper when "there is no genuine issue as to any material fact and...the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating a motion for summary judgment, courts must draw all reasonable inferences in favor of the non-movant. See, generally, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Defendants have moved for summary judgment on grounds that (1) the plaintiff has failed to state a claim under New York common law for breach of contract, and (2) that they are entitled to judgment as a matter of law with respect to the plaintiff's ERISA claim on grounds that the Plan Administrator's decision to deny disability benefits was not arbitrary and capricious, and therefore must be upheld by this Court. The plaintiff has cross-moved for summary judgment on grounds that the Plan Administrator's decision to deny disability benefits was unreasonable and not supported by substantial evidence under the arbitrary and capricious standard.

II. The Plan Administrator's Benefits Determination is subject to an 'arbitrary and capricious' standard of review

The plaintiff alleges that the defendants violated ERISA provisions when they denied his application for long term disability benefits under the Eastman Kodak Company Plan.

When considering an ERISA claim such as this, the Court must first determine the appropriate standard of review to conduct its analysis. The Supreme Court has held that:

> "a denial of benefits challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan."

Firestone Tire and Rubber Co., v. Bruch, 489 U.S. 101, 115 (1989).

If a plan grants the plan administrator discretionary authority to determine eligibility, the Second Circuit has held that the arbitrary and capricious standard of review will be applied. Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 249-252 (2d Cir. 1999). Under the arbitrary and capricious standard, a denial of benefits "may be overturned only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law." Kinstler, 181 F.3d at 249 (2d Cir. 1999), quoting Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995).

Here, the plaintiff argues that he is entitled to a de novo standard of review instead of the more stringent arbitrary and capricious review because the defendants failed to submit a complete copy of the Plan to the plaintiff as required. He claims that defendants also disregarded Magistrate Judge Feldman's scheduling order which specifically directed that "the

plaintiff be provided on or before August 31, 2005 with (1) a certified and complete copy of the administrative file asserting plaintiff in his disability claims; and (2) a certified copy of the **full** Metropolitan Life Long Term Disability Plan."

The plaintiff maintains that since the defendants failed to provide to the Court or to the plaintiff a copy "of the actual Plan showing a grant of discretion,. . . the de novo standard of review is required" and a negative inference against the defendant should be adopted. (Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment at p.5). The plaintiff supplies no authority to support his view.

While a copy of the complete MetLife Long Term Disability Plan has not been provided to the court, I find that the summary of the Plan sufficiently describes the scope of the Plan Administrator's Authority. The terms of the summary plan description provide that:

> The plan administrator of a plan generally has decision making authority with respect to the plan's claims and appeals. The plan administrator's authority is fully discretionary in all matters related to the discharge of his/her responsibilities and the exercise of his/her authority under the plan...

I conclude that the governing plan confers discretionary authority upon the plan administrator and, therefore the defendant's decision denying the plaintiff's long-term disability claim for benefits must be upheld unless it is shown to be arbitrary or capricious. See Firestone, supra. Under this

deferential "arbitrary and capricious" standard of review, the plan administrator's decision will be upheld if it is rational in light of the plan's provisions. See Kinstler, supra.

> III. The Plan Administrator's Decision denying Plaintiff's Application for Benefits was Arbitrary and Capricious

Under the arbitrary and capricious standard of review, a Plan Administrator's decision to deny benefits will not be overturned unless the decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." Fuller v. J.P. Morgan Chase & Co., 423 F.3d 104, 107 (2nd Cir. 2005). In the instant case, I find that the Plan Administrator's determination was not supported by substantial evidence, and therefore, I vacate the Plan Administrator's determination.

To establish that a Plan Administrator's decision is supported by "substantial evidence," the administrator must demonstrate that the decision is supported by "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator] . . . ." Celardo v. GNY Automobile Dealers Health and Welfare Trust, 318 F.3d 142, 146 (2nd Cir. 2003). There must be more then a "scintilla" of evidence to support the Plan Administrator's decision, but there need not be a preponderance of the evidence, provided the evidence relied upon by the Plan Administrator is reliable. Ceraldo, 318 F.3d 146 (citing Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2nd Cir 1995).

In this case, I find that there was insufficient reliable evidence in the record to support a finding that the plaintiff was not disabled, and therefore the Administrator's decision is arbitrary and capricious. The medical evidence submitted by the plaintiff in support of his application clearly demonstrates that the plaintiff is disabled. Plaintiff submitted treatment records of Dr. Raj Mehta, M.D., his treating physician since 1992, who concluded that Westphal is totally disabled and unable to perform work in his occupation or any other occupation. In addition, his treating psychiatrist, Dr. George Nasra, M.D., who treated the plaintiff since January 2001, also submitted evidence supporting plaintiff's application for benefits. Dr. Nasra diagnosed the plaintiff as being disabled because of major depressive disorder and being bipolar. As a result of plaintiff's condition, Dr. Nasra opined that the plaintiff was unable to perform any work related to his duties. Dr. Nasra's opinion was supported by an independent psychiatric evaluation conducted by Dr. Melvin Zax, Ph.D., who is associated with Industrial Medical Associates, whose opinion was used in the Social Security Administration's determination of disability. Dr. Zax rendered his opinion after personally interviewing Westphal on December 11, 2003.

Despite the substantial medical evidence provided by plaintiff's treating physicians and an independent examining physician concluding that the plaintiff is disabled, the Plan Administrator nonetheless found that the plaintiff was not

disabled. In doing so, the Plan Administrator relied on the reports of two doctors who never examined or treated the plaintiff. One report was submitted Dr. Mark Schroeder, a consulting doctor who rendered his opinion based solely on a review of the plaintiffs medical records. Dr. Schroeder never met with, examined, or spoke to the plaintiff. Indeed, Dr. Schroeder did not have the benefit of any direct contact with the plaintiff, but instead rendered his opinion based solely on information provided by plaintiff's physicians. Based on that information, Dr. Schroeder concluded that "the <u>available documentation</u> does not substantiate a severity of psychiatric illness or impairment during the time period under consideration which would be expected to prevent the employee from performing the essential duties of his own occupation during the time period under consideration." (Emphasis mine.) Dr. Schroeder then offers his own opinion, "The fact that (Westphal) had noted significant work setting issues raises the question of whether the employee's continued absence from work may be due to a choice to avoid the perceived stress of the workplace as opposed to an inability to work."

A second report was submitted by Dr. Amy Hopkins, M.D., M.P.H., Ph.D. Like Dr. Schroeder, Dr. Hopkins never met with, examined, or spoke to the plaintiff, and did not have the benefit of any personal contact with the plaintiff prior to rendering her opinion that plaintiff was not disabled. Rather, Dr. Hopkins

based her opinion on a review of the records of Dr. Nasra, plaintiff's treating psychiatrist who found plaintiff to be disabled because of his psychiatric condition.  Dr. Hopkins concluded that "none of [Westphal's] medical conditions, taken either singly or in combination, were documented to be of a nature or severity or have prevented him from performing the material duties of his own or any occupation on a full time basis, without restrictions or limitations as of 3/20/03.  <u>The primary issue in this case appears to be psychiatric</u>."  (Emphasis mine.)  Dr. Hopkins concluded her report by finding that "No physical impairment was objectively <u>documented</u> which would have prevented [Westphal] from [returning to work full time], [in his] own or any occupation, no restrictions or limitations, as of 3/20/03."  (Emphasis mine.)

I find that in this case, in which the issue of a psychiatric disability is in dispute, it was an abuse of discretion for the Plan Administrator to rely on the opinions of two non-treating, non-examining physicians to the exclusion of the substantial evidence in the record demonstrating that the plaintiff is disabled.  In the context of a psychiatric disability determination, it is arbitrary and capricious to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the claimant.  Because a psychiatric opinion that is based solely on

a review of medical records is inherently less reliable than an opinion based on a face-to-face examination, it is an abuse of discretion to rely solely on such opinions, particularly in a case such as this, where the opinion of every physician who actually examined the plaintiff agreed that the plaintiff is disabled.

There can be no serious doubt that a psychiatric opinion based on a face-to-face interview with the patient is more reliable than an opinion based on a review of a cold, medical record.  The psychiatric treating model requires that a doctor treating a psychiatric patient conduct an interview, and medical examination of the patient.  Because of the inherent subjectivity of a psychiatric diagnosis, and because a proper diagnosis requires a personal evaluation of the patient's credibility and affect, it is the preferred practice that a psychiatric diagnosis be made based upon a personal interview with the patient. See The Merck Manual, 15th Edition, Chapter 12, Psychiatric Disorders, page 1456. Because of the subjective nature of the discipline, the examining psychiatrist, must acquire a mastery of objective observation together with knowledge and skills of participant, subjective and self observation. Id.

"The psychiatrist's primary assessment tool is the direct face-to-face interview of the patient: evaluations based solely on review of records . . . are inherently limited." See American Psychiatric Association Publication "IV. Evaluation Process"

http://www.psych.org/psych_proct/treat/pg/pa-adult-4.cfm. (Emphasis added)

Moreover, ". . . it is unethical for a psychiatrist to offer a professional opinion unless he or she has conducted an examination and has been granted proper authorization for such a statement." American Psychiatric Association, "The Principles of Medical Ethics" Section 7, Paragraph 3, 2006 Edition.

I conclude that in the context of a psychiatric evaluation, an opinion based on personal examination is inherently more reliable than an opinion based on a cold record because observation of the patient is critical to understanding the subjective nature of the patient's disease and in making a reasoned diagnosis. Subtleties in the patient's mannerisms, the nuances that are derived from his speech and gestures cannot be observed and evaluated by the non-examining physician. This is all necessary in the evaluation process and cannot be done in absentia nor by merely evaluating the treating physicians' notes and opinions.

I therefore find that it was error for the Plan Administrator to rely upon the opinions of two non-treating, non-examining doctors to the exclusion of the remaining substantial evidence in the record in finding that the plaintiff was not disabled.

Defendants argue that they are entitled to give equal weight to the opinions of treating and non-treating, non-examining physicians because the "treating physician rule" (under which the

opinion of a treating physician is given more weight than the opinion of a consulting physician) does not apply in the context of a disability determination under ERISA. See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 123 S. Ct. 1965, (2003)(holding that Plan Administrators are not required to afford special deference to a treating physician's opinion over the opinion of a non-treating physician). Defendants contend that because they may afford all medical opinions equal weight, they were entitled to credit the opinions of Drs. Schroeder and Hopkins over the opinion of plaintiff's treating and examining physicians, all of whom found plaintiff disabled.

Defendant's objection, however, is inapposite. While it is true that a Plan Administrator is not required to give a preference to a treating physician's opinion, the Administrator must support his findings with substantial evidence. In this case, the substantial evidence does not support a finding that the plaintiff is not disabled because the evidence reveals that every doctor who treated or examined the patient found him to be disabled. The only evidence that suggests that plaintiff is not disabled is insubstantial in that it consists of two reports prepared by doctors who did not have the benefit of observing the plaintiff in person. As stated above, the opportunity to interview and interact with a psychiatric patient is crucial to the diagnosis of a psychiatric disability. Therefore, this case is distinguishable from a case

involving a physical injury, where a diagnosis may be more properly based on the review of objective medical evidence by a non-examining doctor. Because the Administrator's determination that plaintiff was not disabled is not based on substantial evidence, I find the determination to be arbitrary and capricious, and therefore vacate the Administrator's findings.

IV. <u>Plaintiff has established that he is disabled under the terms of the Defendants' Plan</u>.

As stated above, the substantial evidence in the record demonstrates that plaintiff is disabled, and thus entitled to benefits under the Plan. This conclusion comports with the determination of the Social Security Administration, which found Westphal to be unable to perform <u>any</u> occupation, not just his previous work as required under the defendant's Plan. While the Social Security Administration's finding of the plaintiff's disability is non-binding in an ERISA context, it is worth noting that the Administration's finding was based essentially upon the same evidence that was presented to MetLife. Because the substantial evidence in the record supports a finding that plaintiff is disabled, I grant plaintiff's motion for summary judgment with respect to his ERISA claim.

V. <u>The Breach of Contract Claim</u>

The plaintiff alleges a breach of contract claim in his Complaint maintaining that an additional "contract" was created by

Kodak's "practices, writings, and oral assurances" and that Kodak breached that alleged contract by denying the plaintiff his claim for long term benefits.

However, ERISA preempts state law regarding any matters that "relate to" employee benefit plans. 29 U.S.C. § 1144(a). Moreover, "ERISA ... sets forth a 'comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans.' This balancing 'would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress has rejected in ERISA." Romney v. Lin, 94 F.3d 74, 80-81 (2d Cir. 1996), cert. denied, 522 U.S. 906 (1997)(citations and emphasis omitted), quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47-48 (1987). Here, the plaintiff seeks long term disability benefits accorded to him under the Plan. Furthermore, it is undisputed that the Plan in question is governed by ERISA. See Cooley Decl. Exh. 2. Thus, the state law claim for breach of contract is preempted by the ERISA claim and the plaintiff's motion for summary judgment with respect to the breach of contract claim is, therefore, denied.

CONCLUSION

For the reasons set forth above, the plaintiff's motion for summary judgment is granted with respect to the ERISA claim for disability, but denied with respect to the state breach of contract claim. The defendants' motions for summary judgment with respect to the breach of contract claim is granted. The defendants' motion for summary judgment with respect to the ERISA claim for disability is denied.

                                      S/ Michael A. Telesca
                                        MICHAEL A. TELESCA
                                  United States District Judge

Dated:   Rochester, New York
        June 21, 2006